**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOEL DARRAS, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | **CIVIL ACTION NO. 07-cv-4144** |
| vs. ) ) | |
| ) | CLASS ACTION COMPLAINT |
| XINHUA FINANCE MEDIA LTD., FREDY BUSH, SHELLY SINGHAL, JP MORGAN SECURITIES, INC., UBS AG, CIBC WORLD MARKETS CORP., and WR HAMBRECHT + CO., ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) ) ) ) | |

Plaintiff, Joel Darras ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Xinhua Finance Media Ltd. ("Xinhua" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION AND OVERVIEW**

1.    This is a federal class action on behalf of purchasers of Xinhua's American Depository Shares ("ADS" or "shares"), who purchased or otherwise acquired Xinhua's shares pursuant or traceable to the Company's March 8, 2007 Initial Public Offering (the "IPO" or the

"Offering") through  May 21, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Xinhua operates as a diversified media company in the Peoples Republic of China. The company operates in five divisions: Media Production, Broadcasting, Print, Advertising, and Research.

3.    On March 8, 2007, the Company conducted its IPO.  In connection with the IPO, the Company filed a Registration Statement and Prospectus (collectively referred to as the "Registration Statement") with the SEC.  The Company offered over 23 million ADS to the public, with each ADS representing two common shares of the Company's stock.  The IPO was a financial success for the Company, as it was able to raise over $225 million in gross proceeds by selling over 17 million ADS to the public at a price of $13.00 per share.  Additionally, selling shareholders raised almost $75 million in gross proceeds by selling over 5.7 million ADS to the public at a price of $13.00 per share.

4.    However, on May 19, 2007, *Barrons* revealed that the Company had failed to disclose that its Chief Financial Officer ("CFO") had received a cease-and-desist letter from the NASD, and was accused of other improper behavior relating to securities violations. Additionally, it was revealed that a broker-dealer firm that the CFO owned had been accused by the NASD of violating US securities regulations.  On this news, the Company's shares fell 11.8 percent, or $1.18 per share, to close on May 21, 2007 at $8.76 per share, on unusually heavy trading volume.

5.    Then on May 21, 2007, the Company issued a statement about its IPO in an attempt to assure investors that it fully complied with "all disclosure and due diligence processes

required in the United States." However, investors saw through this veiled statement, and in response, the Company's shares fell an additional 18.9 percent, or $1.66 per share, to close on May 22, 2007 at $7.10 per share, on unusually heavy trading volume.

6.      The Complaint alleges that, throughout the Class Period, defendants failed to disclose or indicate the following at the time of the Company's IPO: (1) that the Company's CFO, Shelly Singhal's company, Bedrock Securities, was accused by the NASD of violating U.S. securities regulations; (2) that the Company's CFO had received a cease-and-desist order from the NASD; (3) that the Company had failed to adequately conduct a due diligence investigation prior to its IPO; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

7.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

10.      Venue is proper in this Judicial District pursuant to Section 22 of the Securities

Act and Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of

the acts and transactions alleged herein, including the preparation and dissemination of

materially false and misleading information, occurred in substantial part in this Judicial District.

Additionally, the Company's IPO was actively marketed in this Juridical District.

11.    In connection with the acts, conduct and other wrongs alleged in this Complaint,

defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and

the facilities of the national securities exchange.

## PARTIES

12.    Plaintiff, Joel Darras, as set forth in the accompanying certification, incorporated

by reference herein, purchased Xinhua's shares at artificially inflated prices during the Class

Period and has been damaged thereby.

13.    Defendant Xinhua is a subsidiary of Xinhua Finance Limited.  The Company is

headquartered in the Shanghai, China.

14.    Defendant Fredy Bush ("Bush") was, at all relevant times, the Company's Chief

Executive Officer ("CEO") and Chairman of the Board of Directors.

15.    Defendant Shelly Singhal ("Singhal") was, at all relevant times, the Company's

CFO and a member of the Board of Directors.

16.    Defendants Bush and Singhal are collectively referred to hereinafter as the

"Individual Defendants."   The Individual Defendants, because of their positions with the

Company, possessed the power and authority to control the contents of Xinhua's reports to the

SEC, press releases and presentations to securities analysts, money and portfolio managers and

institutional investors, i.e., the market.   Each defendant was provided with copies of the

Company's documents alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17.    Defendants JP Morgan Securities Inc. ("JP Morgan"), UBS AG ("UBS"), CIBC World Markets Corp. ("CIBC"), and WR Hambrecht + Co. ("WR Hambrecht") were underwriters and manager of the Company's IPO.  Defendants J.P. Morgan, UBS, CIBC, and WR Hambrecht are collectively referred to hereinafter as the "Underwriter Defendants."  The Underwriter Defendants served as underwriters for the Company's IPO, and served as financial advisors and otherwise assisted in the preparation of Xinhua's IPO.

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Xinhua operates as a diversified media company in the People's Republic of China. The company operates in five divisions: Media Production, Broadcasting, Print, Advertising, and Research.

19.    On March 8, 2007, the Company conducted its IPO.  In connection with the IPO, the Company filed a Registration Statement and Prospectus (collectively referred to as the "Registration Statement") with the SEC.  The Company offered over 23 million ADS to the public, with each ADS representing two common shares of the Company's stock.  The IPO was a

5

financial success for the Company, as it was able to raise over $225 million in gross proceeds by selling over 17 million ADS to the public at a price of $13.00 per share. Additionally, selling shareholders raised almost $75 million in gross proceeds by selling over 5.7 million ADS to the public at a price of $13.00 per share.

## Materially False and Misleading
## Statements Made in the Registration Statement

20.     Regarding an overview of the Company's IPO, the Registration Statement, in relevant part, stated:

> This is an initial public offering of American depositary shares, or ADSs, by Xinhua Finance Media Limited, or Xinhua Finance Media.
>
> Xinhua Finance Media is offering 17,307,923 ADSs, and the selling shareholders identified in this prospectus are offering an additional 5,769,000 ADSs. Each ADS represents two common shares.
>
> Prior to this offering, there has been no public market for our ADSs or common shares. Our common shares have not been listed on any exchange. The ADSs have been approved for listing on the Nasdaq Global Market under the symbol "XFML".
>
> * * *
>
> You should rely only on the information contained in this prospectus. Neither we nor the underwriters have authorized anyone, including the selling shareholders, to provide you with information that is different from that contained in this prospectus. This prospectus may only be used where it is legal to offer and sell these securities. The information in this prospectus is only accurate as of the date of this prospectus.

21.     Regarding the details of Company's Board of Directors, its composition, and the Board's committees, the Registration Statement, in relevant part, stated:

> Our board of directors consisted of one director before this offering. Seven other directors were nominated to take directorships at the time the Securities and Exchange Commission

declared effective our registration statement on Form F-1, of which this prospectus is a part. A director is not required to hold any shares in the company by way of qualification. Provided he has properly disclosed his interest, a director may vote with respect to any contract, proposed contract or arrangement in which he is materially interested. Our board may exercise all the powers of the company to borrow money, mortgage its undertaking, property and uncalled capital, and issue debentures or other securities whenever money is borrowed or as security for any obligation of the company or of any third party. Prior to the completion of this offering, we intend to appoint more directors to our board. All of our nominee directors have signed an agreement with us governing the rights and duties as directors. Under these agreements, there are no benefits upon termination of their directorships.

### Committees of the board of directors

Upon the completion of this offering, we will have three committees under the board of directors: an audit committee, a compensation committee and a nominating and corporate governance committee. We adopted a charter on February 21, 2007 for each of the three committees, which will become effective upon the closing of this offering.

### Audit committee

We have appointed Aloysius Lawn as chairman of our audit committee, and John Springer and Shelly Singhal as members. Aloysius Lawn and John Springer satisfy the "independence" requirements of the Nasdaq Stock Market, Marketplace Rules and Rule 10A-3 under the Securities Exchange Act of 1934. We are under obligation by Nasdaq Rules to ensure that within one year from this offering all our audit committee members must satisfy these independence requirements. The audit committee will oversee our accounting and financial reporting processes and the audits of the financial statements of our company. The audit committee will be responsible for, among other things:

- appointing, retaining and overseeing the work of the independent auditors, including resolving disagreements between the management and the independent auditors relating to financial reporting;

- pre-approving all auditing and non-auditing services permitted to be performed by the independent auditors;

- reviewing annually the independence and quality control procedures of the independent auditors;

- discussing material off-balance sheet transactions, arrangements and obligations with the management and the independent auditors;

- reviewing and approving all proposed related party transactions;

**Compensation committee**

We have appointed John Springer as chairman of our compensation committee, and Aloysius Lawn and Shelly Singhal as members. John Springer and Aloysius Lawn satisfy the "independence" requirements of the Nasdaq Stock Market, Marketplace Rules. The compensation committee will assist the board in reviewing and approving our compensation structure, including all forms of compensation relating to our directors and executive officers. Within one year from this offering all committee members must satisfy the independence requirements of the Nasdaq rules. Our chief executive officer may not be present at any committee meeting while her compensation is deliberated. The compensation committee will be responsible for, among other things:

- reviewing and approving executive compensation;

- reviewing periodically and managing any long-term incentive compensation plans, share option plans, annual bonuses, employee pension and welfare benefit plans;

- determining our policy with respect to change of control or "parachute" payments; and

- managing and reviewing director and executive officer indemnification and insurance matters.

**Nominating and corporate governance committee**

We have appointed John Springer as chairman of our nominating and corporate governance committee, and Aloysius Lawn and Shelly Singhal as a members [sic]. Aloysius Lawn and John Springer satisfy the "independence" requirements of the Nasdaq Stock Market, Marketplace Rules. Within one year from this offering all committee members must satisfy the independence requirements of the Nasdaq rules. The nominating and corporate

governance committee will assist the board of directors in selecting individuals qualified to become our directors and in determining the composition of the board. The nominating and corporate governance committee will be responsible for, among other things:

- recommending to the board nominees for election or re-election to the board or for appointments to fill any vacancies;

- reviewing annually the performance of each incumbent director in determining whether to recommend such director for an additional term;

- overseeing the board in the board's annual review of its own performance and the performance of the management; and

- considering, preparing and recommending to the board such policies and procedures with respect to corporate governance matters as may be required to be disclosed under the applicable laws or otherwise considered to be material.

**Duties of directors**

Under Cayman Islands law, our directors have a duty of loyalty to act honestly in good faith with a view to our best interests. Our directors also have a duty to exercise the skill they possess and such care and diligence that a reasonably prudent person would exercise in comparable circumstances. In fulfilling their duty of care to us, our directors must ensure compliance with our memorandum and articles of association. We have the right to seek damages if a duty owed by our directors is breached.

22.    Regarding further description of the Company's Directors, and particularly the Company's CEO and CFO, the Registration Statement, in relevant part, stated:

**Directors**

Fredy Bush has been our Chief Executive Officer and Chairman of the Board of Directors since our founding in November 2005. She has served as a director and Chief Executive Officer of our parent, Xinhua Finance Limited, since February 2004. Since June 2001 and January 2002, respectively, she has served as Vice Chairman and Chief Executive Officer of Xinhua Financial Network Limited, or XFN, the predecessor to our parent. From 1987 to 2001, Ms.

Bush operated a consulting business in Asia where she assisted clients in building business alliances, particularly between the United States and Asia and in the financial sector. Her consulting business worked in Taiwan from 1985 to 1990 to establish Taiwan's first official futures market. Ms. Bush serves as a director for 27 subsidiaries or affiliates of our parent, including EconWorld Media Limited. Ms. Bush serves on the board of Bush Corporation, Chazara Foundation, and Xinhua Finance Library Foundation Limited.

Ms. Bush has received a number of awards, including being listed among the Wall Street Journal's Top 50 Women to Watch in 2004 and the Ellis Island Medal of Honor by the National Ethnic Coalition of Organizations in 2006. In 2006, she also received the Asia Entrepreneur of the Year Award from CNBC and a Woman of Influence Award for Entrepreneur of the Year by the American Chamber of Commerce in Hong Kong.

Shelly Singhal has served as our Chief Financial Officer since September 2006, and has served as a director of our parent, Xinhua Finance Limited, since July 2004. Mr. Singhal will serve as our director, commencing from the Securities and Exchange Commission's declaration of effectiveness of our registration statement on Form F-1, of which this prospectus is a part.

Mr. Singhal sits on the Compensation Committee, Audit Committee and Investment Committee of our parent. Mr. Singhal founded the SBI Group, an investment company, in June 2001, serving as its Managing Director until December 2003, and as Chairman and CEO since that time. Mr. Singhal has also served as a director and member of the Compensation Committee of Small World Kids Inc. since October 2004. Mr. Singhal owns Bedrock Securities, a NASD licensed broker dealer and its sister company, Bedrock China Futures, Ltd., which is an Asian securities trading company. Mr. Singhal worked for SBI-E2 Capital, a member of Softbank Investment Group, from 2001 to 2003. Mr. Singhal holds a B.S. degree in Business Administration from Seaver College at Pepperdine University.

23.     Regarding the risks associated with purchasing the Company's shares, the

Registration Statement, in relevant part, stated:

> **Our business depends substantially on the continuing efforts of our key executives. Our business may be severely disrupted if we lose their services.**

Our future success heavily depends upon the continued services of our key executives, particularly Fredy Bush, who is the Chief Executive Officer of our company. Our Chief Executive Officer also serves as the Chief Executive Officer of our parent company and will be required to devote a substantial amount of time in that capacity. We rely on the expertise of our key executives in business operations and the advertising and media industries and on their relationships with our shareholders, business partners and regulators. If one or more of our key executives are unable or unwilling to continue in their present positions, we may not be able to replace them easily or at all. Therefore, our business may be severely disrupted, our financial condition and results of operations may be materially and adversely affected and we may incur additional expenses to recruit and train personnel.

In addition, if any of these key executives joins a competitor or forms a competing company, we may lose customers and business partners, and our operating results may be adversely affected. Each of our executive officers has entered into an employment agreement with us that contains confidentiality and non-competition provisions. If any disputes arise between our executive officers and us, these agreements may not be enforced effectively.

24.    The statements contained in ¶¶ 20 – 23 were materially false and misleading when made because Defendants failed to disclose or indicate the following: (1) that the Company's CFO, Shelly Singhal's company, Bedrock Securities, was accused by the NASD of violating U.S. securities regulations; (2) that the Company's CFO had received a cease-and-desist order from the NASD; (3) that the Company had failed to adequately conduct a due diligence investigation prior to its IPO; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

25.    On May 15, 2007, the Company issued a press release entitled "Xinhua Finance Announces Management Changes, Strengthened Executive Team and Streamlined Structure." Therein, the Company, in relevant part, stated:

11

Xinhua Finance Limited (TSE: 9399) (OTC ADRs: XHFNY) ("XFL"), today announced the promotion of several executives in connection with the creation of a shared services group designed to consolidate and simplify certain operational and reporting structures between XFL and its subsidiary Xinhua Finance Media ("XFMedia") (NASDAQ:XFML).

The shared services group is made up of executives from both XFL and XFMedia, and centralizes support for strategy, investor relations, corporate communications, legal services and branding for XFL and XFMedia. This group reports to Fredy Bush, who is CEO of both companies.

XFL, founded in 1999, is a financial information company focusing on China which serves financial institutions, corporations and re-distributors through five focused and complementary service lines: Indices, Ratings, Financial News, Investor Relations, and Distribution. XFMedia is a China based financial and entertainment media company. Through its five synergistic business groups, Advertising, Broadcast, Print, Production and Research, XFMedia offers a total solution empowering clients at every stage of the media process.

The two Xinhua Finance businesses operate with highly complementary objectives: XFL continually improves the quality and scope of its financial content, while XFMedia focuses on distributing that content to a target audience of high net worth individuals in China via television, radio, newspapers, magazines and other distribution channels.

Fredy Bush, Chief Executive commented, "We are keenly aware of the need for our corporate structure and executive team to stay one step ahead of the rapid development of our businesses. Our sharp focus and clear strategy allows us to think and plan ahead. The Xinhua Finance companies now have more than 10,000 investors globally, in excess of $1.5 billion in market capital and have completed $400 million in M&A transactions. The shared services group is important to the group's efficient expansion going forward and represents our commitment to sustainable growth."

John McLean, who has served as XFL General Counsel since 2004, will continue to head up the legal department for the group as part of the shared services team.

Given his in-depth knowledge of both XFL and XFMedia, Shelly Singhal has been appointed Executive Director, Corporate Development, and will serve as a part of the shared services group

with responsibility for capital markets activities, transactions, and mergers and acquisitions.

Andrew Chang has been appointed Chief Financial Officer of XFMedia. Andrew joined the finance department of XFL in 2003. He played a key role working closely with Shelly Singhal in the development of the XFMedia business as Managing Director of Finance. Zhu Shan remains in his position as Chief Operating Officer of XFMedia.

At XFL, David Wang assumes the role of Chief Financial Officer after serving as Managing Director, Corporate Finance since joining XFL in 2006. He replaces Gordon Lau, who is leaving XFL to pursue other interests. David will assume the role on July 1st and is working closely with Gordon to facilitate a smooth transition. During his tenure with XFL, David worked with Gordon on several financing transactions, including XFL's $100 million high yield bond financing. Dan Connell continues in his role as XFL Chief Operating Officer.

Fredy Bush added, "These changes in responsibility will better leverage our executive skill set and help build a management infrastructure strong enough to support our ambitious growth plans. Personally, I am very excited to be able to sharpen my focus on what I do best: strategic and tactical planning, leadership and China market development. John, Shelly, David, Dan, Andrew, and Zhu Shan have made valuable contributions to our success and these enhancements to our corporate structure will increase their opportunities to do so in the future. I extend my sincere appreciation to Gordon Lau for his invaluable contribution to the successful development of Xinhua Finance, and wish him the best in his future endeavors."

26.    On May 19, 2007, *Barrons* published an article entitled "Ignoring an Inconvenient

Truth."  Therein, the article revealed:

ASIAN BUSINESS MEDIA TAPPED FREDY BUSH as the "entrepreneur of the year" last October for building her Xinhua Finance into a Chinese media and financial information powerhouse.

In just seven years, Xinhua has become a kind of McGraw-Hill of China -- with financial news services, stock indexes and ratings agencies. Listed in Tokyo, Bush's company's raised $300 million in March in a U.S. offering on behalf of its XFML unit. Xinhua Finance has collected some influential U.S. assets this year,

including the hard-hitting proxy advisory firm Glass Lewis that's staffed with veterans of the Securities and Exchange Commission and the Wall Street Journal...or at least it was until last week.

That's when two of the most prestigious staffers at Glass Lewis resigned after apparently concluding that their new parent company, Xinhua Finance, would have flunked a Glass Lewis review of its corporate transparency. It turns out that Xinhua Finance Media's IPO prospectus failed to mention some awkward facts about the company's then-chief financial officer, Shelly Singhal.

The 39-year-old Singhal was simultaneously the company's CFO and an investment banker and stock broker who runs the Newport Beach, Calif., firm Bedrock Securities. And since April 2006, Singhal's firm has been under a cease- and-desist order from the National Association of Securities Dealers, as the regulators seek to suspend Bedrock for violating several SEC rules. I called Bedrock, but no one returned my message.

* * *

Friday, Glass Lewis' head of research, Lynn E. Turner, resigned. Before joining Glass Lewis, Turner had been arguably the best accounting regulator to serve at the Securities and Exchange Commission. Wednesday, Glass Lewis' managing director and research editor, Jonathan Weil, resigned. He had come to the proxy advisory firm from the Wall Street Journal, where he was the first reporter to blow the whistle on Enron.

"I am uncomfortable with and deeply disturbed," Weil said in his resignation letter, "by the conduct, background and activities of our new parent company Xinhua Finance Ltd., its senior management, and its directors. To protect my reputation, I no longer can be associated with Glass Lewis or Xinhua Finance."

Shortly after I called Xinhua Finance Friday afternoon to ask about Singhal, the company put out a press release announcing that he was resigning from the boards of both Xinhua Finance and its Nasdaq-listed subsidiary, and also leaving his management positions. "It is a difficult decision to leave these two Companies that I have helped to grow," he said in the announcement, "but there are other priorities that will require my full attention, so it is clearly the right thing to do now."

A few moments later, I was on the phone with Xinhua Finance CEO Freddy Bush. She praised Singhal's skills at dealing with

regulatory regimes in the U.S., Japan and China. "Shelly's got some very unique skills," she said.

I asked if she'd known about the NASD action against Singhal's brokerage firm when putting together a prospectus for Xinhua Finance Media that omitted that fact. After a long speech about how she had relied on the best advice of the company's underwriters and lawyers, she acknowledged that, "yes," she had known about the NASD problems of Singhal's brokerage firm. Her legal advisers told her, she said, that the prospectus didn't have to make that disclosure.

"Shelly continues to believe that these allegations are without merit," she continued. She also pointed out that Xinhua Finance has thousands of employees in more than a dozen countries. And even the proxy adviser Glass Lewis will survive the resignations of its marquee names, she asserted. "Glass Lewis has a very large group of incredibly talented people. Their product is world-class."

27.    Also on May 19, 2007, the Company issued a press release entitled "Xinhua

Finance Board Announcement."  Therein, the Company, in relevant part, stated:

Xinhua Finance Ltd. (TSE: 9399) (OTC ADRs: XHFNY) and Xinhua Finance Media (Nasdaq: XFML) announced today that Mr. Shelly Singhal has resigned from the Boards of both companies, as well as from all executive and managerial positions. His departure is immediate.

"Mr. Singhal provided important assistance throughout the development of Xinhua Finance Ltd. and Xinhua Finance Media," commented Chairman and CEO Fredy Bush, "He remains a strong supporter of both companies, and he has our thanks for his tireless efforts in contributing to our successes to date."

"It is a difficult decision to leave these two companies that I have helped to grow. Unfortunately, recent allegations against me in the press concerning my activities prior to joining Xinhua Finance have created a situation where my continued involvement with Xinhua Finance has become a distraction to management, so it is clearly the right thing to do now," Mr. Singhal commented. "There is a deep pool of entrepreneurial and managerial talent in place to insure continued progress. I remain a loyal and long-term follower and shareholder, and wish the two companies well."

Mr. Singhal is currently the subject of a civil suit which is unrelated to Xinhua Finance. Mr. Singhal has advised that he

believes this claim to be without merit and that he intends to dispute it vigorously.

Fredy Bush added, "We wish Shelly the best and are grateful to him for his efforts on behalf of Xinhua Finance. During his time with Xinhua Finance, we believe Shelly has conducted himself with integrity and professionalism. In the meantime, we look forward to putting this matter behind us and focusing on what we do best—continuing to build our business in China and creating value for our shareholders".

28.    On this news, the Company's shares fell 11.8 percent, or $1.18 per share, to close on May 21, 2007, the next trading day, at $8.76 per share, on unusually heavy trading volume.

29.    Also on May 21, 2007, the Company issued a press release entitled "Xinhua Finance CEO issues a statement."  Therein, the Company, in relevant part, stated:

In response to the media coverage over the weekend, Xinhua Finance Chief Executive Fredy Bush issued the following statement:

Xinhua Finance Media listed on NASDAQ after complying fully with all disclosure and due diligence processes required in the United States. Furthermore, the Company engaged the most qualified independent advisers available to oversee this process. We have an internal committee co-chaired by John McLean, General Counsel of Xinhua Finance and Kevin Cameron, President and co-founder of Glass Lewis, who continually review the Group's corporate governance to make recommendations to the independent Corporate Governance Board Committee of Xinhua Finance Media and the Board of Xinhua Finance Limited. I look forward to keeping investors and followers informed of our progress and these ongoing initiatives.

30.    On this news, the Company's shares fell an additional 18.9 percent, or $1.66 per share, to close on May 22, 2007 at $7.10 per share, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Xinhua's shares pursuant or traceable to the Company's March 8, 2007 IPO

through May 21, 2007, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

32.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Xinhua's shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Xinhua or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

34.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the

Class Period misrepresented material facts about the business, operations and management of Xinhua; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Xinhua's shares was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Xinhua's shares traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Xinhua's shares relying upon the integrity of the market price of Xinhua's shares and market information relating to Xinhua, and have been damaged thereby.

38.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Xinhua's shares, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Xinhua's financial well-being, business relationships, and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Xinhua and its financial well-being, business relationships, and prospects, thus causing the Company's shares to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's shares at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased shares of Xinhua at artificially inflated prices and were damaged thereby.  The price of Xinhua's shares significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Xinhua, their control over, and/or receipt and/or modification of Xinhua's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Xinhua, participated in the fraudulent scheme alleged herein.

**Applicability of Presumption of Reliance:**
**<u>Fraud On The Market Doctrine</u>**

43.    At all relevant times, the market for Xinhua's shares was an efficient market for the following reasons, among others:

(a)    Xinhua's shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Xinhua filed periodic public reports with the SEC and the NASDAQ;

(c)    Xinhua regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Xinhua was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales

force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Xinhua's shares promptly digested current information regarding Xinhua from all publicly-available sources and reflected such information in Xinhua's share price. Under these circumstances, all purchasers of Xinhua's shares during the Class Period suffered similar injury through their purchase of Xinhua shares at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Xinhua who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 11 of
### The Securities Act Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud Plaintiff or members of the Class. This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Registration Statement.

47.     This claim is asserted by Plaintiff against all defendants by, and on behalf of, persons who acquired the Company's shares pursuant to or traceable to the false Registration Statement issued in connection with the March 8, 2007 IPO.

48.     Individual Defendants as signatories of the Registration Statement, as directors and/or officers of Xinhua and controlling persons of the issuer, owed to the holders of the shares obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein. As such, defendants are liable to the Class.

49.     Underwriter Defendants owed to the holders of the shares obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein. As such, defendants

are liable to the Class.

50.    None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

51.    Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

52.    As a direct and proximate result of defendants' acts and omissions in violation of the Securities Act, the market price of Xinhua's shares sold in the IPO was artificially inflated, and Plaintiff and the Class suffered substantial damage in connection with their ownership of Xinhua's shares pursuant to the Registration Statement.

53.    Xinhua is the issuer of the shares sold via the Registration Statement.  As issuer of the shares, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

54.    At the times they obtained their shares of Xinhua, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

55.    This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus.

56.    By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violation of Section 12(a)(2) of**
**The Securities Act Against All Defendants**

57.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

59.    Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the Xinhua IPO Registration Statement.

60.    The Xinhua IPO Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  The Individual Defendants' actions of solicitation included participating in the preparation of the false the misleading Registration Statement.

61.    Defendants owed to the purchasers of Xinhua's shares, including Plaintiff and other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

62.    Plaintiff and other members of the Class purchased or otherwise acquired

Xinhua's shares pursuant to and/or traceable to the defective Registration Statement. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement.

63.    Plaintiff, individually and representatively, hereby offer to tender to defendants those shares which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such shares, in return for the consideration paid for that shares together with interest thereon. Class members who have sold their Xinhua shares are entitled to rescissory damages.

64.    By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act. Accordingly, Plaintiff and members of the Class who hold Xinhua's shares purchased in the IPO have the right to rescind and recover the consideration paid for their Xinhua shares, and hereby elect to rescind and tender their Xinhua shares to the defendants sued herein. Plaintiff and Class members who have sold their Xinhua shares are entitled to rescissory damages.

65.    This action is brought within three years from the time that the shares upon which this Count is brought was sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

### THIRD CLAIM
### Violation of Section 15 of The Securities Act
### Against the Individual Defendants

66.    Plaintiff repeats and realleges each and every allegation contained above, excluding all allegations above that contain facts necessary to prove any elements not required to state a Section 15 claim, including without limitation, scienter.

67.    This count is asserted against Individual Defendants and is based upon Section 15

of the Securities Act.

68.    Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Xinhua within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Xinhua to engage in the acts described herein.

69.    Individual Defendants' position made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

70.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**FOURTH CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

71.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Xinhua shares at artificially inflated prices.    In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

73.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to maintain artificially high market prices for Xinhua's shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

74.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Xinhua's financial well-being, business relationships, and prospects, as specified herein.

75.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Xinhua's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Xinhua and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Xinhua shares during the Class Period.

76.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and

participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

77.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Xinhua's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its shares. As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being, business relationships, and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

78.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Xinhua's shares was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Xinhua's shares were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the

shares trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Xinhua's shares during the Class Period at artificially high prices and were damaged thereby.

79.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Xinhua was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Xinhua shares, or, if they had acquired such shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

80.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's shares during the Class Period.

## FIFTH CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

82.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.    The Individual Defendants acted as controlling persons of Xinhua within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

85.    As set forth above, Xinhua and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's shares during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class

members against all defendants, jointly and severally, for all damages

sustained as a result of defendants' wrongdoing, in an amount to be proven

at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: May 25, 2007                         **BRODSKY & SMITH, LLC**
                                            By:*Evan J. Smith, Esquire (ES3254)*
                                            Evan J. Smith, Esquire (ES 3254)
                                            240 Mineola Boulevard
                                            Mineola, NY 11501
                                            (516) 741-4977
                                            (516) 741-0626 (facsimile)

                                            **SCHIFFRIN BARROWAY**
                                            **TOPAZ & KESSLER LLP**
                                            Richard A. Maniskas, Esquire
                                            280 King of Prussia Road
                                            Radnor, PA 19087
                                            (610) 667-7706
                                            (610) 667-7056

                                            *Attorneys for Plaintiffs*